Thank you. May it please the court if I might remove the microphone? You may. You might pull the microphone down closer so we can hear you. I'm short. Thank you. My name is Marshall Dale Evans and I have the pleasure of representing the Northwest Arkansas Conservation Authority. As alleged in the complaint, the authority was organized under the Arkansas Joint County and Municipal Solid Waste Disposal Act in order to provide for solid waste in and around the Bentonville area for the public, Bentonville, Arkansas for the public at large. This lawsuit is for the recovery of the cost of that original construction for the wastewater pipeline disposal system that the pipeline cracked and leaked and caused sewage overflows and sinkholes. We believe that the district court prematurely dismissed the complaint because the complaint alleged sufficient facts to justify recovery. The appellee claims that the time limitations would bar the activities of the authority. We believe that the common law doctrine of nullum tempus provides for the recovery of public funds and gives the exemption to the time bar that would allow the proceeding to continue. This action is an attempt to recover public funds for the benefit of the parties involved. In order to analyze the time bar defense, the public policy of Arkansas must be considered. Arkansas has historically provided that public wastewater treatment systems are for the public health and for the benefit of the public at large. It usually and has historically retained the immunities of the sovereign under its police power. The Arkansas public policy has been strongly in favor of the use of the nullum tempus authority for that governmental entities. The authority is exactly the entity that would be able to take advantage of the nullum tempus concept because it was created for the purpose of providing waste disposal for a large area of the state. The issue before this court is whether or not the activities of the authority are for the public interest or for the private benefit. In order to answer that question, we must first review the public policy of Arkansas. It has been historically held that the public policy of Arkansas is contained within the statutes. As a matter of fact, in the Curtsy v. City of Fort Smith case, the court in that action said the legislative acts are the policy of the state. There is really no need to consult other jurisdictions when Arkansas has such strong public policy that actually addresses the public-private treatment of this activity. The statute on which the authority was created has several components. It established a public instrumentality to function and operate in a government capacity to perform public functions and all of those retaining the immunities. The purpose of that statute was to allow small cities and counties to pool their resources and provide waste disposal plants and pipelines to operate public works for the public use and benefit. That includes pump stations and pipelines and treatment facilities. When a subordinate political subdivision or an agency tries to enforce what is an effort for the public at large, that interest that they are attempting to enforce should retain the sovereign immunities in regard to the time limitations. This pipe started leaking and was cracked and caused sewage overflows into the waters of the state of Arkansas. And that failure of the waste disposal system created public harm that this lawsuit is trying to cure. Let me ask you, I have two questions. One is, in a case like this, could you have two different claims, one of which would be barred by the statute of repose and one which isn't? And that is, the one claim that the defendants in this case are arguing is barred by the statute of repose is the contractual claim based upon the faulty construction. But could you also have a second claim for the environmental damage that is caused or damage to homeowners if the sewage backs up into their basement? Are they treated differently? I think they would be and it depends on what the purpose of that activity is. For instance, let me use an example if I may. This facility has got a building that treats the sewage and it has components. Like for instance, they might buy an automobile for the managed use. That would be obviously a private contract. Or if they had to do some landscaping and they hired a construction company to do that, that again would be subject to the statute of limitation or repose because that is definitely private for that entity. But when you're creating a waste disposal for a large community, people come in and out of this community all the time from around the world and they use this facility. That obviously in our opinion is for the public. And so there can be private endeavors like the landscaping issue that I mentioned but in separate from the public issue that we're claiming is involved in this case. So on your idea of say a public individual or the backing up of sewage into their home, I don't believe that would apply to the Nullum Tempus because that is a private person's right to not have sewage in their home and when that happens they have a right to bring that action. Also, they would know immediately that that sewage was in their house. So the time limitations would not be quite as onerous because they see the situation immediately. In this one, the pipeline is under the ground and until the pipe cracked and started overflowing and allowing sewage to go into the waters of the state and up out of the ground, they had no way of even recognizing that there was a problem that had existed. I hope that addresses your question. You mentioned Arkansas policy and suggested that we don't need to look to other jurisdictions. Is there any Arkansas law, case law, anything on point to this? There are two cases. One is the Brighton case, which was an agency of the Arkansas ADEQ, as we call it, the Quality Enforcement part of the state, that is a sub-agency and they brought an action for some kind of disposals that they felt like were contaminating and they received the benefit of nullum tempus in that case. The Jensen case, even though it's not in a wastewater, it dealt with the same kind of issues in that it dealt with the nullum tempus treatment and the immunities that the state was seeking. I believe that was a tax case, but they used the same concept and said you can't bar the state from taking those actions because it's for the benefit of the public at large. The primary reason for not needing to go to other jurisdictions is because Arkansas deals with waste disposal repeatedly. There's the Morrison case. There were several that we cited in our brief. Jensen, Anderson, and Moreland all dealt with waste disposal or sewage type cases, even though they weren't dealing with the actual concept of nullum tempus. They were using it for the sovereign immunity and we believe that that's the defensive component and the nullum tempus is the offensive component of the same coin. In other words, they can defend or they can seek an offensive action. We believe that they both exist in the sovereign immunities. When this action was brought to seek damages for the failure of the pipeline, it was basically alleged that the pipeline had failed because there was a failure of the original bedding. The pipe has to be supported by gravel. We should at least be given an opportunity, in our view, to put on some evidence to show how that failure affected the public at large. That's the issue that the authority is bringing forward and should be able to vindicate that public issue and put on some evidence to support it. We weren't given that opportunity because it was dismissed using New Hampshire public policy when Arkansas has lots of public policy dealing with waste disposal type things and the way that they're treated. I have five minutes reserved, so I'll leave that part of the rebuttal. You may. Thank you. You may. Thank you for your argument. Thank you. Okay, thank you. May it please the court. Your task in deciding this issue is to predict how the Arkansas Supreme Court would rule on the Nolam Tempest Doctrine. Is NACA entitled to the protection of the Nolam Tempest Doctrine? Based on the Arkansas case law and the decisions of the Arkansas Supreme Court, your answer must be no, that NACA would not be entitled to the Nolam Tempest Protection. There has not been case law since probably 1945 dealing with anything other than a state agency, but the analysis of this requires a deep dive into Arkansas jurisprudence. And if you look at those cases, I'm convinced you will conclude that NACA is not entitled to that protection. Well, let me ask you this. Do you dispute that they would be entitled to the protection in the right circumstance? In other words, are you arguing that only the state gets the benefit of it and that they do not, or they do not in this circumstance? I think that some municipal actions may get Nolam Tempest Protection. Jensen rules that a tax collector is entitled to Nolam Tempest Protection for a city. But certainly in this case, seeking to recover damages for alleged construction defects arising out of a private construction contract, it is not applicable. One of the thoughts I had when I was reviewing this yesterday actually was, was there any thought about certifying this to the Arkansas Supreme Court? No one took that action. I think that would have been interesting. But certainly no party moved in that direction, Your Honor. Are you relying on an argument that NACA doesn't perform a public function? Well, there are public interests involved in NACA's actions. Well, isn't the statute the authority under which they came into being? Doesn't it say that they're performing public functions and will operate in a governmental capacity? Under Section 117 of the Act, it does say that, dealing with tax immunity, and says it is not liable for property taxes or income generated from property that it owns. So it makes it clear that it has the tax protection of a public entity. But Section 107 of the statute makes it clear that it is operating, when it operates with respect to contracts, it's doing so in a private capacity. I'm sorry, go ahead, Your Honor. Let's assume for sake of argument that I don't necessarily agree with you on that. But then I think the next part of your argument is that they're not enforcing a public right or a governmental right. Is that right? That's correct, Your Honor. Explain that to me. Why isn't this potentially something that they'd be recovering that benefits the public at large? Well, because they entered into a private contract, and they're seeking an award of damages based on that contractual relationship. And the Arkansas case law makes clear that even if a public corporation, a municipality, or a county is seeking recovery that involves public rights, it is not entitled to the Nolan-Tempest protection. That was first established in the city of Fort Smith v. McKibben in 1883, where the court expressly stated municipal corporations are barred by statutes of limitation, the same as individuals. And Western Clay Drainage District decided in 1929 that was an action seeking foreclosure of a lien to recover monies that presumably were public and in the public interest. And they made clear that the doctrine applies only to the sovereign and not to public corporations. It made that clear. And it specifically said that the statutes creating the drainage districts give those districts the power to sue and to be sued. And that was a critical component of the court's ruling in Western Clay Drainage District, the same as we have here. Then in Hurt v. Sternberg in 1943, that was a property dispute regarding a deed which came from a drainage district. And the court cited McKibben, cited Western Clay Drainage District, and concluded that they're not going to reverse that longstanding line of precedent. Which brings us to 1945 and the case of Jensen v. Fordyce Bathhouse, a very important case. There, the counterclaim of the county tax collector was to collect on taxes. The court ruled that that action was not entitled to the Null and Tempest, that was entitled to the Null and Tempest protection. The language of the court in Jensen is absolutely critical. The court said, it is well settled that statutes of limitation may be imposed against counties, cities, school districts, and municipal corporations. And they cite the long line of cases. This gets to your point, Judge Grunder, about the public function. The court said, it is conceded that some of those cases involve the enforcement of certain public rights, but none involve the sovereign power of the state to collect tax revenue. And then the court cites to the Clark v. School District case and distinguishes it, and this is a most important distinction made by the court in Jensen. That was an action to recover money illegally embezzled, if you will, by a county treasurer, and the school district filed a lawsuit seeking to recover from that county treasurer public money that he stole. And in that case, the court ruled that the school district was not entitled to Null and Tempest protection because they were seeking an award of damages, which is a private cause of action. And the court distinguished that case in Jensen and said, but here, this is the right of the sovereign to collect tax revenue, and the Null and Tempest protection would apply in that case. But it doesn't when you're filing a lawsuit seeking an award of damages as we have here. The statute makes clear that NACA is not a public entity. It's not a governmental entity. It is a corporation. It is involved with public issues, obviously, wastewater disposal, but it has the right to contract as a corporation. It has the right to file lawsuits. It has the right under that statute. I can be specific as to the provision. Section 107.5 gives it the authority to contract. Section 6, to apply to the state itself for agencies for permits in the same manner as any other person. And 107.8, to purchase insurance against tort liability. The legislature expressly recognized that exposure, gave them that authority, made it clear that this is a corporation, call it a public corporation or a quasi-public corporation, but it is not the arm of the government. Now, you said earlier that this was a private contract, not a public contract. Yes, Your Honor. Are they required by statute to follow the public contractual obligations in terms of bidding, letting? I think every state has some requirements as to how you let, if you're a public entity, how you let a public contract. Do they have to follow those requirements in this case? Well, I think they did, and I don't know what the law, the statute I don't believe addresses whether these solid waste authorities have to follow the public bid process, but certainly they did in this case, and Crossland was awarded the bid based on the project specifications and drawings that were submitted by the engineer or drawn by the engineer. So I don't know that anyone knows the answer to that case. I think it was prudent on NACA to follow a public bid process. So appellant relies on the Brighton case, which is the most recent case in Arkansas jurisprudence on the Null and Tempest Doctrine. The Brighton case was an entirely different species of case, and I think it goes to the distinction you made, Judge Malloy, between the two different types of claims. The Brighton case was an agency of the state government. It was the Department of Environmental Quality. It was seeking to enforce environmental regulations against polluters. That is an action by the state itself, not a municipality, not a city, not a public corporation, but by the sovereign itself seeking to enforce the rights of the sovereign with respect to the public welfare, which is we're going to stop somebody from polluting. That's not what we have here, although the Second Amendment complaint of NACA makes reference to various public interests and public theories, including endangered species. They're not seeking to enforce those environmental regulations. They're not seeking to enforce laws of the state against polluters. They're seeking money based on a private contractual relationship. That is the key distinction. I know that the appellant has made much of Judge Holmes' reliance on the New Hampshire case, the city of Rochester case, and other case law. I agree, of course, that this case must be decided on the basis of the Arkansas case law, and I think if you look at that case law, it is clear that the Nolen-Tempest Doctrine would not extend to NACA in this circumstance. Certainly, I don't think there's anything wrong with Judge Holmes having reviewed and analyzed cases from other jurisdictions. Their reasoning was persuasive, and it informed him in his decision, but I think this must be decided based on Arkansas law. Now, the key point that appellant makes, and that Mr. Evans made in his argument, is the public policy of the state has always recognized that these are governmental functions. In the cases that he cited, they're all dealing with municipal immunity, tort liability of municipalities. And in those cases, the court said, this is a governmental function, and we're going to extend tort immunity to you. Those cases don't deal with the Nolen-Tempest Doctrine, and this is important because those cases that do deal with the Nolen-Tempest Doctrine all specifically recognize that Nolen-Tempest is not available to cities, counties, or public corporations. Yes, the court can say with respect to tort immunity, these are governmental functions and we're not going to subject municipalities to the exposure of large tort judgments, but when it comes to enforcing rights under contract by a public corporation, the Arkansas courts have uniformly, through Jensen, stated that Nolen-Tempest protection is not available. That's what we have to go on. Your task is to predict how the Arkansas Supreme Court would rule, and I submit to you if you analyze those cases, you will reach the conclusion that the court would rule Nolen-Tempest is not available to benefit NACA in this case. Let me address the argument made that the motion to dismiss, the Rule 12b6 motion, should not have been granted because they didn't give them the benefit of their pleadings. I disagree with that. I think, really, it has traditionally been the case, of course, in this court and all other courts, that time bars, limitations are perfectly suited for 12b6 initial motion to dismiss. Here, in order to determine the applicability of the Nolen-Tempest doctrine, all the court needed was what is the nature of the claim, right? What are you doing? You're suing for damages. And two, what is the nature of the entity? What is NACA? And all of that is set forth in the statute. So those were the key allegations. He accepted them as true. His opinion clearly stated that he followed Twombly and the recent pronouncements of the Supreme Court in ruling on a 12b6 motion. So this is a question of law. It is a question of law that Judge Holmes correctly decided, and I would urge this court to affirm the decision of the district court in all respects. And unless there are further questions, I'll take my seat. Very well. Thank you for your argument. Thank you. Thank you. All right. Mr. Evans, we'll hear from you in rebuttal. Thank you, Your Honor. First of all, let me say that some of the cases that my distinguished colleague cites need more inspection. For instance, the Western Clay Drainage had a limitation that was built in the statute that created it. All of these waste disposal statutes have their own set of requirements, and when you get into the drainage district cases, they're created under different sets of statutes. They don't have any applicability to this sort of thing. The real issue here is what is it that NACA is trying to accomplish? It's trying to recover public money. It was public money that came together to provide this waste disposal. To answer your question about the bidding, yes, it was public bid, as is all the contracts of a certain amount are done in this particular entity as well as generally in Arkansas. Is it required by statute? There are statutes that require it. I can't cite you the statute off the top of my head, but they are following statutory requirements. Well, let me ask you this. If your argument is correct, why would the Jensen case have to distinguish the Clark case involving recovering the funds that were embezzled from the treasurer or by the treasurer? Why wouldn't that case also come out the same way? Well, I think what Jensen was trying to establish is what is the methodology being used? But I'm focused on the Clark case now. They say Clark was different because that was an action to recover funds illegally paid by the treasurer. It would seem under your rationale that would also be a case that benefits from the doctrine because the county is trying to recover public funds. Arkansas does treat whether the money is paid illegally or received. For instance, if there is a tax that is determined to be illegal and it's bringing in revenue, that gets different treatment than if a public official is paying a debt or responsibility that's not otherwise legal to be paid. That has historically been the way that they've treated them as separate entities. And so I think without going into an exhaustive explanation of that evolution of the law, they're basically saying that we treat these two circumstances differently. And I believe that Jensen is setting out the theory that if what you're seeking is in the public interest, if that's the right that you're trying to vindicate, then that gets a treatment that is different than whether the right that you're seeking has a more private application. And I think that's exactly what we're arguing here, is that these funds were gathered to do a public function. The argument my opponent counsel makes as far as whether the interest that is being sought is governed by environmental regulations, we've had that in our complaint. There are several environmental regulations. We have to comply with them. Even though there hadn't been a violation at the time this suit was dismissed, those regulations still apply to this entity and they have to abide by them. They can't just say, well, no one has brought an action against us alleging environmental action and therefore we can ignore it. They still have to follow those statutes and that's part of the reason they sought to recover the money. They were kind of being proactive trying to prevent a lawsuit being brought against them for damages for violating an environmental act. And so they were being penalized for trying to do the right thing by going out and saying, look, we've got to recover this money. We've got to fix this problem because it's going to get worse. It's going to extend outside the easement that they have control of. It's already extended into the waters of the state. They knew well enough that just like in the Brighton case, the Arkansas Environmental Quality would be on top of them pretty soon to enforce those environmental regulations. So they were proactive. They tried to do the right thing by extending out the effort to correct a problem that they saw had already developed. And the only way to do that was to recover the monies that had been expended so that the fix could be made and a new pipeline could be installed. There's also other claims being brought, not just contract in this case. There's negligence, there's warranty. There's other claims that were never able to be developed because of the premature dismissal of the claim. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion.